UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOUIS CHARLES SHEPTIN<br><br>Plaintiff,<br><br>v.<br><br>LIFEWATCH SERVICES, INC., AND RAFI HEUMANN, CEO LIFEWATCH SERVICES, INC.,<br><br>Defendants. | No. 13 C 5022<br><br>Judge Thomas M. Durkin |

MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff Louis Sheptin alleges that defendants LifeWatch Services, Inc. ("LifeWatch") and Rafi Heumann, its CEO, manufactured and distributed defective heart monitors that failed to detect cardiac abnormalities that resulted in Sheptin's heart attack. R. 24. The defendants have moved to dismiss Sheptin's complaint for lack of subject matter jurisdiction, failure to state a claim, and *forum non conveniens*, and to strike certain portions of his complaint. R. 46; R. 49.[1] For the

---

[1] On January 21, 2015, Heumann filed a "Motion to Quash, Dismiss or Strike." R. 49. In it, his counsel states "[u]pon information and belief, Rafi Heumann resides outside of the United States, in [Israel] and resided as such on the alleged date of service." *Id.* ¶ 2. The defendants' attorney indicated at the hearing on LifeWatch's motion to dismiss that she intended to file a motion on Heumann's behalf, but she did not notice that motion for hearing. Sheptin does not address the motion to quash in his response brief, but it is difficult to tell whether this indicates that he concedes that service was improper. Therefore, the Court declines at this time to address his motion to quash service. The Court will, however, grant Heumann's request to join LifeWatch's motion to dismiss. *Id.* ¶ 3.

1

following reasons, the Court grants the defendants' motion in part, and denies it in part.

**LEGAL STANDARDS**

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the Court's subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion." *Bolden v. Wells Fargo Bank, N.A.,* No. 14 C 403, 2014 WL 6461690, at *2 (N.D. Ill. Nov. 18, 2014) (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 443-44 (7th Cir. 2009)). "If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiffs favor." *Bolden*, 2014 WL 6461690, at *2 (citing *United Phosphorus, Ltd. v. Angus Chem. Co.,* 322 F.3d 942, 946 (7th Cir. 2003)). A factual challenge to the court's subject matter jurisdiction, on the other hand, is based on the assertion that "the complaint is formally sufficient but ... there is *in fact* no subject matter jurisdiction." *United Phosphorus,* 322 F.3d at 946 (emphasis in original). When considering a factual challenge to the court's jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue,* 536 F.3d 651, 656–57 (7th Cir. 2008). "Where jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof, regardless of who

raised the jurisdictional challenge." *Craig v. Ontario Corp.,* 543 F.3d 872, 876 (7th Cir. 2008).

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## BACKGROUND

LifeWatch manufactures and distributes cardiac monitoring devices and provides cardiac monitoring services. R. 24 ¶¶ 9, 49. At the recommendation of his

3

physicians, Sheptin enrolled in two 30-day LifeWatch "cardiac surveillance program[s]." *Id.* ¶¶ 6, 10. Notwithstanding statements on LifeWatch's website that "patients will receive 24-hour attended monitoring per 30 day period," his first cardiac surveillance program lasted only 21 days (from June 27, 2011 to July 17, 2011). *Id.* ¶ 7.

On May 15, 2013, Sheptin was seen by doctors at the UCSD-Sulpizo Cardio Clinic for "life-threatening cardiac arrhythmias." *Id.* ¶ 10. At that time, Sheptin's physicians recommended a second 30-day LifeWatch cardiac surveillance program. *Id.* Sheptin received a "King of Hearts" cardiac monitor from LifeWatch on May 21, 2013. *Id.* ¶ 11. The monitor malfunctioned two days later, displaying error code "E009." *Id.* ¶ 12. Sheptin called LifeWatch and was told that the company was "having problems with the King of Hearts." *Id.* At LifeWatch's suggestion, Sheptin mailed the defective heart monitor back to LifeWatch in exchange for a replacement. *Id.* ¶¶ 12-13. A replacement "King of Hearts" monitor arrived on May 29 or 30, 2013. *Id.* ¶ 14. This monitor malfunctioned on June 2, 2013, displaying the same error code as the previous monitor ("E009"). *Id.* ¶ 15. At that time, Sheptin contacted Cynthia Benson at the Food and Drug Administration ("FDA"), who told him that the FDA had issued a "Warning Letter" to LifeWatch in December 2012. *Id.* ¶ 16. According to the letter, an FDA inspection revealed that LifeWatch's monitors were "adulterated" as defined by FDA regulations. *Id.* ¶¶ 15-16; *see also id.* at 11-15 (Warning Letter, dated December 17, 2012, Ex. C to Am. Compl.). That same day, June 2, 2013, Sheptin called LifeWatch and was told by a "Ms. Keys" that

4

LifeWatch was "having problems with those devices[,] you should contact your doctor to upgrade." *Id.* ¶ 18. Sheptin returned the second defective monitor to LifeWatch on June 3, 2013. *Id.* ¶ 19. At some point around this time frame, Sheptin contacted other FDA officials who confirmed that LifeWatch's devices were not FDA approved and that the "technology was questionable." *Id.* ¶¶ 20-23.

Sheptin received a third monitor from LifeWatch on June 6 or 7, 2013. *Id.* ¶ 24. On June 15, 2013, the third heart monitor also malfunctioned, displaying the same error code ("E009") as the first two defective monitors. *Id.* ¶ 28. Sheptin called LifeWatch to notify the company that his third heart monitor was also defective, and that he intended to file (or had already filed) complaints against LifeWatch with federal agencies. *Id.* ¶¶ 29, 32. Sheptin shipped the third defective monitor back to LifeWatch, and awaited the promised delivery of a fourth device. *Id.* ¶¶ 32-33. LifeWatch cancelled that delivery mid-shipment. *Id.* ¶ 34.

Sheptin suffered a heart attack and had angioplasty surgery on August 27, 2013. *Id.* ¶ 40. Sheptin alleges that LifeWatch's defective devices failed to detect a "cardiac T-wave abnormality," which if detected sooner would have prevented the heart attack. *Id.* (alleging that the abnormality was "discovered too late"). His complaint asserts claims against LifeWatch and Heumann for breach of contract (based upon their failure to provide a 30-day monitoring period, as advertised on their website), products liability, medical malpractice, and violation of the "Consumer Protection Act." *Id.* ¶¶ 49-55. Sheptin seeks $500,000 in compensatory damages and $300,000 in punitive damages. *Id.* at 7.

5

ANALYSIS

I. **Diversity Jurisdiction**

The defendants argue that Sheptin has not sufficiently alleged diversity jurisdiction because he has not: (1) provided "independent verification" that his claim exceeds $75,000; and (2) alleged LifeWatch's state of incorporation. *See* R. 47 at 5-6. With respect to the jurisdictional minimum, the defendants argue that Sheptin "should be required to independently verify that his claim exceeds" $75,000 because he "has filed numerous lawsuits in federal court alleging injury to his heart." *Id.* at 5. The defendants have not cited any legal authority for this novel requirement. Sheptin states in his complaint that he seeks $500,000 in damages, which satisfies the jurisdictional minimum unless it is "legally impossible" for him to recover that amount. *Grinnell Mut. Reinsurance Co. v. Haight*, 697 F.3d 582, 585 (7th Cir. 2012). The fact that Sheptin has alleged injuries to his heart in other lawsuits does not make it legally impossible for him to recover more than $75,000 in this lawsuit.

The defendants are correct, however, that Sheptin must allege LifeWatch's state of incorporation. "Corporations are persons with two citizenships, which 28 U.S.C. § 1332(c)(1) specifies as the jurisdiction of incorporation plus the principal place of business." *Fellowes, Inc. v. Changzhou Xinrui Fellowes Office Equip. Co. Ltd.*, 759 F.3d 787, 788 (7th Cir. 2014). Sheptin, a citizen of California, alleges only that LifeWatch's principal place of business is in Rosemont, Illinois. R. 24 ¶ 2. It appears, however, that this is a pleading defect only, as the fact that Delaware is

6

LifeWatch's state of incorporation is publically available information.[2] The Court notes that Sheptin has also not alleged Heumann's citizenship. *See Evergreen Square of Cudahy v. Wis. Hous. and Econ. Dev. Auth.*, 776 F.3d 463, 465 (7th Cir. 2015) ("[F]ederal courts are obligated to inquire into the existence of jurisdiction *sua sponte*."). The Court will dismiss Sheptin's complaint without prejudice so that he may properly allege LifeWatch's state of incorporation and Heumann's citizenship.

## II. The Sufficiency of the Complaint

It appears likely that Sheptin will be able to overcome the defects in his jurisdictional allegations. Therefore, in the interests of expediency, the Court will address the defendants' other arguments.

### A. Sheptin's Tort Claims

Although Sheptin was not required to plead legal theories in his complaint, *see Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 517 (7th Cir. 2015), he seeks tort damages under at least three such theories: (1) medical malpractice; (2) negligence; and (3) strict products liability.

#### 1. Medical Malpractice

Sheptin alleges in his amended complaint that the defendants "committed medical malpractice . . . by providing defective heart monitoring." R. 24 ¶ 53. The defendants contend that this claim is deficient because Sheptin did not attach to his complaint (1) an affidavit from a health care professional stating that there is a

---

[2] The Court takes judicial notice of the fact that LifeWatch is a Delaware corporation. *See* http://www.ilsos.gov/corporatellc/CorporateLlcController (search "Lifewatch Services Inc."); https://delecorp.delaware.gov/tin/controller (search "Lifewatch Services Inc.").

7

"reasonable and meritorious cause" for filing his complaint, or (2) an affidavit "stating an acceptable reason why such an opinion and report could not be obtained." *Hahn v. Walsh*, 762 F.3d 617, 628 (7th Cir. 2014) (quoting 735 ILCS 5/2-622(a)); *see also id.* at 629 (holding that § 5/2-622 is a substantive law applicable in federal diversity cases under the *Erie* doctrine). In response to this argument, Sheptin attached a letter to his response brief from his cardiologist stating that it is the doctor's "strong opinion that [the receipt of defective heart monitors] caused Mr. Sheptin extreme emotional distress and most likely worsening of his heart conditions." R. 56 at 9. Even assuming that this letter was sufficient under § 5/2-622, the more fundamental problem with Sheptin's medical-malpractice claim is that the defendants are not physicians. Thus, the standard of care in the medical profession is simply inapplicable to the defendants. The Court dismisses Sheptin's medical-malpractice claim.

### 2. Strict Liability

To prevail on a claim of strict products liability, Sheptin must show that his injury resulted from a condition that is "attributable to the defendants" and that made their product "unreasonably dangerous." *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010). "A product may be found to be unreasonably dangerous based on proof of any of three conditions: a physical defect in the product itself, a defect in the product's design, or a failure of the manufacturer to warn of the danger or to instruct on the proper use of the product." *Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 335 (Ill. 2008) (citing *Sollami v. Eaton*, 772 N.E.2d 215 (Ill. 2002)).

8

LifeWatch argues in conclusory fashion that Sheptin "has failed to plead the relationship between LifeWatch and the heart monitor and the monitor surveillance program to establish a cause of action under a products liability theory." R. 47 at 8. On the contrary, Sheptin alleges that the defendants "manufactured" and delivered to him three defective heart monitors that failed to detect a heart condition that ultimately led to his heart attack. R. 24 ¶ 49. This is sufficient to allege a claim against the defendants for strict products liability.

### 3. Negligence

To establish liability for negligence, Sheptin must allege "duty, breach, proximate cause, and damages." *Malen*, 628 F.3d at 307. "Although strict liability is concerned only with the condition of the product, negligence involves a defendant's fault in addition to the product's condition. So in addition to showing that the product was defective, the plaintiff must show that the manufacturer knew (or should have known) that the product was unsafe." *Id.* (citations omitted). "A manufacturer has a nondelegable duty to design reasonably safe products." *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 264 (Ill. 2007). As the Court discussed in connection with his strict liability claim, Sheptin alleges that he received three defective "King of Hearts" monitors from the defendants and that he was injured when those products malfunctioned. R. 24 ¶ 49. Moreover, he alleges that the defendants were aware of a substantial risk that the monitors were defective as evidenced by the FDA's Warning Letter. *Id.* ¶ 16. This is sufficient to allege a claim for negligence against the defendants.

B.  **Breach of Contract**

The defendants have moved to dismiss Sheptin's breach of contract claim because (1) he failed to attach a copy of the alleged contract, citing 735 ILCS 5/2-606; and (2) he has not alleged facts sufficient to state a plausible claim. R. 47 at 7. The defendants' first argument is meritless: pleading standards in diversity cases are governed by federal law, not state law. *See, e.g.*, *Mount Hawley Ins. Co. v. Guardsmark, Inc.*, No. 01 C 5088, 2001 WL 766874, at *1 (N.D. Ill. July 5, 2001) (holding that § 5/2-606 does not apply in federal court). The Court agrees, however, that Sheptin has not stated a claim for breach of contract. "To prevail on a breach of contract claim under Illinois law, a plaintiff must show: (1) the existence of a valid and enforceable contract; (2) performance under the contract by plaintiff; (3) the breach of the contract by the defendant; and (4) a resulting injury to plaintiff. *Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 926 N.E. 2d 934 (Ill. App. 2010). Sheptin alleges that his *physicians* enrolled him in LifeWatch's 30-day heart monitoring program, and that the program ran for only three weeks, contrary to statements on the company's website. These alleged facts are insufficient to establish the existence of an enforceable contract between Sheptin and the defendants. The Court dismisses Sheptin's breach of contract claim without prejudice.

C.  **"Consumer Protection Act"**

Sheptin also alleges that the defendants "violated the Consumer Protection Act by their acts and omissions." R. 24 ¶ 55. Sheptin may be referring to Illinois's

Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et seq*. In any case, construing the complaint liberally, the Court infers that Sheptin is asserting a claim against the defendants for falsely advertising the length of its cardiac surveillance program: it purported to offer patients cardiac monitoring for 30 days, but actually provided monitoring for 21 days. R. 24 ¶¶ 7, 48. Thus, his *claim* is sufficiently clear to satisfy Rule 8, notwithstanding the fact that his legal theory is somewhat unclear at this stage of the case. *See Runnion*, 786 F.3d at 517. The Court denies the defendants' motion as to Sheptin's "Consumer Protection Act" claim.

### III. The Defendants' Motion to Strike

The defendants have moved to strike numerous paragraphs of Sheptin's complaint as "immaterial, impertinent, and scandalous." R. 47 at 8-9. They have not, however, attempted to explain how any particular allegation runs afoul of Rule 12(f). Indeed, as applied to most (if not all) of the challenged allegations, the defendants' motion is frivolous. *See, e.g.*, *id.* at 8 (moving to strike ¶ 17 of Sheptin's complaint, which states: "Plaintiff attaches this warning letter as Evidence Marked Exhibit 'C'"). The Court denies the defendants' motion to strike.

### IV. *Forum Non Conveniens*

Finally, the defendants ask the Court to dismiss Sheptin's lawsuit under the doctrine of *forum non conveniens*. "The common law doctrine of *forum non conveniens* allows a federal district court to dismiss a suit over which it would normally have jurisdiction in order to best serve the convenience of the parties and

11

the ends of justice." *Stroitelstvo Bulg. Ltd. v. Bulg.-Am. Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009). "A federal court has discretion to dismiss a case on the ground of *forum non conveniens* 'when an alternative forum has jurisdiction to hear the case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Sincochem Intern. Co. Ltd. v. Malay. Intern. Shipping Corp.*, 549 U.S. 422, 429 (2007) (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447-448 (1994)) (citations and omitted). "A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum. When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.' *Id.* at 430 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981)).

The defendants argue that Sheptin's choice to sue in this district is entitled to less deference because his home state is California. R. 47 at 9. This is a puzzling argument given the fact that Sheptin has chosen to sue LifeWatch in *its* home forum.[3] It is certainly convenient for LifeWatch to litigate in the Northern District of Illinois. And if Sheptin believed that this district was inconvenient for him, then presumably he would not have filed his complaint here. The defendants' motion to dismiss pursuant to *forum non conveniens* is denied.

## Conclusion

---

[3] Whether it would be convenient for Heumann is unclear.

12

For the foregoing reasons, the Court: (1) grants LifeWatch's Rule 12(b)(1) motion to dismiss; (2) grants its Rule 12(b)(6) motion to dismiss in part, and denies it in part; (3) denies its Rule 12(f) motion to strike; and (4) denies its motion to dismiss for *forum non conveniens*. The Court dismisses Sheptin's complaint without prejudice. Sheptin may, on or before August 3, 2015, file an amended complaint alleging LifeWatch's state of incorporation and Heumann's citizenship. If he does so, the case will proceed to discovery on his strict liability, negligence, and false advertising claims. If Sheptin believes in good faith that he can correct the deficiencies the Court has identified with his medical malpractice and breach of contract claims, then he may amend them (along with his jurisdictional allegations) on or before August 3, 2015. If Sheptin fails to amend his jurisdictional allegations on or before August 3, 2015, the Court will dismiss this case with prejudice.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: July 13, 2015